The next case, 18-13-72 Minnesota, John Brand et al. v. National Union Fire Insurance Company of Pittsburgh, etc. All right, Mr. Stewart. You may proceed when you're ready. Thank you, Your Honors. Chris Stewart of Anastasi Jail. I'm appearing on behalf of the appellants in this case, John Brand, Daniel Jewell, John Mottola, and Jeff Bendell. I think it's appropriate to provide the court with a bit of background to keep everything in context here relative to the summary judgment order issued by the district court on January 17, 2018. The quick background is there were companies involved and there were individuals involved with respect to the purchase of wind turbines that were going to be constructed in and around the Winona, Minnesota area. The manufacturer of those wind turbines was a company by the name of Unison based out of South Korea. There were a number of agreements and what eventually happened is that Unison believed that it was agreed by some of the actions undertaken by the individuals, which are the insureds in this case, as well as the company. So there are a number of claims asserted in a federal district court action which named the companies and it named the individuals. The quick background is that there were 17 counts that were alleged in the initial Unison complaint. Three of those were directed to the individual. In this case, I think they'll be referred to back and forth as either the insureds or the appellants and those are the individuals. The quick math to keep in mind through this is that of the 17 claims, one of the initial positions taken by National Union in the event that it was going to provide defense costs on behalf of the individuals was to take a simple math, say there were 17 claims asserted, three of those were asserted against the individuals and that gets you to 18%. So when we get to the question of what is this case all about, it's not a coverage case. We're all in agreement about that. It's not a duty to defend case. What it is is a case to determine what is a fair and reasonable allocation for the recovery of fees and costs incurred by the individual insureds in conjunction with the Unison litigation. Now again, with context and how this plays into the summary judgment, Unison initially asserted a number of claims against, as I mentioned, the corporate defendants as well as the individuals. Three of those were against the individuals. In that federal district court action, defenses were asserted on behalf of both the companies and the individuals. The key element with respect to the defenses that were asserted in that federal district court action came right out of the box and that was, wait a minute, Unison, you misrepresented what you could deliver. You did not conduct any cold weather package, so you breached the contract by delivering to us defective wind turbines. Now the reason why that's important is that's going to be a string throughout the litigation and subsequent arbitration asserted by both the company and the individual defendants, and that is, look it, Unison, you breached first. So regardless of what 17 counts you have alleged against both the insureds and the companies, they don't go anywhere because... Counselor, I follow that. I'm wondering though, does that string end with the arbitration award? I mean, my recollection of the award is that it was not explicitly based on breach of warranty claim. As a matter of fact, I remember some sort of comment in there about the arbitration panel found it to be not dispositive, and then the panel went into some equitable relief and essentially awarded rescission of the contract. Does that matter? You're citing this chord through the process and ultimately, and you may disagree with the way I'm reading that. I may not be fair to that, but it seems to me that's not what the arbitration panel made their decision on. Does that matter? Am I accurate there? First, yes, you're accurate. Secondly, I don't think it does matter because keep in mind with respect to the policy and what the individual insureds are entitled to recover. That's the cost of defense. It doesn't say it's got to be a good defense. It doesn't have to say it's a bad defense. It doesn't even say it's got to be competent counsel. At the end of that, yes, you're accurate about the reading of that order, but eventually the insureds won. So whatever defense strategy was implemented on behalf of the appellants in that litigation ultimately prevailed because as we pointed out, one of the cases is that Great Western casualty would require that the insureds receive reimbursement for their fees and costs associated with limiting liability. That's cited on page 26 of the brief, and that's exactly what happened. So I agree with your assessment. The arbitration panel did not ultimately dismiss the claims of Unison based upon the breach of warranty or the fraud, but ultimately whatever defense strategy was implemented on behalf of the insureds, it won. There was no liability whatsoever assessed against any of the individuals. Now one of the things that again the string goes from one of the key issues is the case went from federal court litigation and then ultimately wound up in arbitration. The reason being is that there was an arbitration provision in one of the key documents for the purchase of these wind turbines. Now what National Union has been arguing throughout is, well, wait a minute. This policy doesn't allow for recovery of fees and costs in an arbitration proceeding. Yet when you read the policy, there's no distinction. Whatever forum is selected, if they are reasonably related to the defense of the insureds, and we all agree that the insureds are entitled to some recovery, it's just a question of the allocation of that recovery, it doesn't make any difference whether or not it's in the federal court litigation or it's in the arbitration. Now eventually the case got arbitrated and what's important to remember is Unison asserts 17 counts in the federal court litigation. The insureds and the companies assert a number of defenses. The case is then kicked into arbitration and before that's done, the defense counsel for the corporate defendants and for the individuals opted to put the case in arbitration. It was a decision made because their conclusion was individuals are less likely to get stung by an arbitration panel as opposed to potential liability in federal district court. So it was interesting then when the case then was converted to arbitration, the exact same defenses became affirmative claims in the arbitration. Now that's one of the beefs that National Union has, saying, well, but wait a minute, the policy doesn't provide an allocation for the event that the insureds, in this case, assert affirmative defenses. Well, we've cited a number of cases that stand for exactly the opposite of that and we would direct a court to the IBP, coincidentally versus National Union, where Tyson Foods sued IBP in Arkansas. Well, in its defense, IBP then starts an independent action with affirmative claims in the Delaware court and ultimately the court concluded that IBP was entitled to whatever allocation was reached in that particular case for the recovery of fees and costs, even though affirmative claims were asserted up in the Delaware court. Now we get further string down where the arbitration is going and Unison finally gets around to asserting its counterclaims because the arbitration, if you recall, was commenced by the corporate entities and subsequently joined by the insureds. So Unison does its counterclaims and now, lo and behold, guess what the defenses are? They're the exact same defenses that were asserted in the federal court litigation and now become the exact same defenses that are asserted in the arbitration. The arbitration ultimately prevails, but in the meantime, we have the summary judgment motion and this is the crux of the appeal. If we take a look at the district court award, we don't disagree with the proposition that the insureds were looking to get a 100% allocation of the fees and costs based upon the supposition that the defenses raised on behalf of the insureds, which we claim were absolute, that if they prevailed, there could be no liability whatsoever on the part of the insureds and also the company. So based on the assessment of counsel representing the insureds and the district court litigation and then the arbitration, we saw an allocation of 100%. Clearly, the court disagreed with that. However, what's unclear about the decision is what did it say then? Because National Union also brought its cross summary judgment motion. It had argued early on that there was a... Well, I think it's pretty clear what the court, in fact, the court clarified. Did it not? I don't believe it did. The parties asked the court to clarify, to explain what did the decision mean, right? It meant that the insureds... And the court said plaintiff's amended complaint sought a declaration that they're entitled to 100% of defense fees and costs. No party sought declaratory relief as to any alternative allocation amount. According to the courts, January 17th order is limited to the issues presented, does not represent a decision as to any other issue. So as I read that, the district court viewed this action as kind of an all or nothing. I'm entitled to 100%, but no alternative request and the court viewed the action as something other than a action for declaratory relief where the request is for the court to determine within a range as to what the relief would be. So with that being the case, I'm wondering what do we have on appeal? Well, apparently National Union is of the belief that the court agreed with the 40% recoverable fees in the litigation and 10% in the arbitration because they continue to remit that amount to the individual insurers and that's why it's unclear. Let me ask it this way. If this case is submitted and our court affirms the district court, where does that leave your client? I think it's going to wind up in another action. A, for the fees and costs that were paid subsequent to the issuance of the summary judgment, which National Union can, and I know this fact. Do you think affirming the district court entitles you to a recovery of some amount? Well, I think it more properly should be remanded because I go back to the language in the court's order saying National Union proposes that plaintiffs face 40% of the exposure because they comprise 40% of the Unison lawsuit defendants. So as I read that, which is why we sought clarification, I was of the belief that the district court had determined that 40% was the reasonable amount. Now, again, that's not the 100%. But the complaint doesn't ask. It asks for 100%, period. It doesn't ask for a declaratory judgment as to what percentage is owing and then made an argument for 100%. It just said, I want an award for 100%, period. And the court said, no. But what is the fair and reasonable amount? I mean, the policy requires- It would appear the district court thought that issue was not before it. And I'm wondering if it's before us. If it wasn't before the district court, how could it be before us? Well the reason being is that apparently the order has been interpreted by National Union to support what they had argued is a 40% allocation for the federal court litigation, 10% only for the arbitration. There's no finding to support that. No, they've paid those monies, correct? The 40%- Well, under the Piper Jaffray case that's in the papers, isn't it your burden to overcome? And if you didn't file the appropriate motion, if I'm following Judge Shepard's here below, seeking that, and the court rejected your 100%, aren't we left with a status quo and that's 40% and 10%? That may be, but again, that's not what I mean. If it is the 10%, that is a distinction without a difference. Because how do you say you only get 40% for the federal court litigation when the exact same defenses and claims were asserted in the arbitration and you don't have a provision in the insurance policy that draws any distinction whatsoever between having it either mediated, arbitrated, litigated, or otherwise? And there's no finding by the court that in any way addresses the fact there is no reference to 10% in the district court order. So that's why I'm thinking we have one party interpreting it as a 40-10. We have another agreeing that it's not 100%. We did throw in there under Rule 15 that the court could look at alternatives that were put into the summary judgment pleadings, such as the 82%, but it was the national union- I'm looking at what the pleadings, what the complaint, and the answer say. And it seems to me that all that presented to the district court was the single issue of was 100% owing. I don't disagree with that, but you also have a cross- The court said no, end of case. But you also have national union bringing its own cross-summary judgment motion. It wasn't defending against 100%. It brought its own 40% allocation that it found to be more reasonable than the 100% allocation that was being requested by the insurance. So again, as we read the order, it seems to stand for the proposition that the court found that a 40% allocation across the board, both for- because she lumped- I see my time is up. If I can finish this one line. Go ahead. The court doesn't draw a distinction between the arbitration and the litigation. It merely continues to say the unison litigation. So based on the court's own language, it grouped together and didn't distinguish between recoverable fees and costs associated with the litigation versus those incurred in conjunction with the arbitration. So by reading that one provision of the 40% being the more reasonable allocation submitted by national union, that's what I believe the allocation is at this point as we sit here today. Thank you. Mr. Vaccaro? Mr. Vaccaro, what was the case before the district court about? What was the issue? Mr. Honor, may it please the court. The litigation that occurred to discuss the underlying cases, the arbitration and the district court action, which is called the unison lawsuit. The motion brought by the appellants dealt exclusively with 100% recovery of costs and fees as to both actions. That was the motion that was brought. National union brought a cross motion for an order that appellants didn't meet their proof to demonstrate that and also brought an alternative partial summary judgment motion seeking to remove some of the fees and costs based on an expert's review of the invoices. But the court's disposition, i.e. granting national union's summary judgment motion and denying appellants' summary judgment motion brought an end to the case in as much as what national union had been doing before and during the case was providing 40% of defense costs in the unison lawsuit and 10% as to the arbitration. We don't call them defense costs because they were just fees and costs. They weren't necessarily defense costs. So that, in our view, that is sort of the default, if you will, that the policy provides for unless until such time a new allocation is agreed upon or determined by a court. So we believe that the case is over and that the allocation that national union had specified, not having been changed by the district court in any regard, should apply. There's no district court order that adopted that, your percentage? So 40-10, there's no order that says, well, the judge did say 40% was reasonable in the unison litigation, but the court did not directly say 10% is reasonable with respect to the arbitration in her order. But she did grant national union's summary judgment and deny appellants' summary judgment. Well, maybe I'm just looking at this in totally the wrong way. But as I look at the pleadings, I see a complaint in which the appellant asked for a declaration that 100% of the fees and costs should be paid. Correct. And your answer denied that. Correct. That's the pleadings. Yes, correct. Now, on these motions for summary, cross motions for summary judgment in the briefing, there's all kinds of things talked about. But as far as the issue presented to the court, as I see it, it was, is 100% owing? Yes or no? That is correct. And whether the court said no and clarified that in this text entry on February the 9th of 2018, and in fact specifically said no party sought declaratory relief as to any alternative allocation amount and the court's January 17th order is limited to the issues presented and does not represent a decision as to any other issue. That's correct, your honor. That was what was before the court. And again, it was our proof to show an allocation in these cases. It's important to note that the coverage involved here is director's and officer's coverage. It's not general commercial liability coverage. That brings into the case duties to defend and things like that. This coverage does not involve any duty to defend. The burden lay with the insured to demonstrate an alternative allocation is required or appropriate under the policy. Well, the district court said no, denied the request, the claim, denied the claim brought by the appellant for recovery of 100%. The court said no. Case over. Correct. Do you think the appellant could bring another action and seek an alternative amount? No, I don't believe so, your honor. I think that was exactly what was being litigated in the matter that we're standing before you today on. We believe it was appellant's burden, as I said, supported by the UnitedHealth case, puts the burden on the insured, the appellant, to demonstrate what would be an alternative allocation. Okay, let's put it this way. Let's say you quit paying and you've not paid even the 40%. What recourse would the appellant have? Well, I think that would create a new issue entirely. It's an aside, but the arbitration is now complete and it's been confirmed in the district court and so the bills have all been submitted and as I understand it, paid. But that would seem to be a separate breach of contract wholly outside of anything we're discussing here with respect to allocation and the underlying, for the underlying litigations. Well, the appellant would have no court order or judgment that it could proceed on, would it? Not this court's order, but it would have the contract and what National Union had performed, how that National Union had performed in the past pursuant to that contract. But again, the court, the appellants didn't give the district court what it required to come up with a different allocation. Appellants had argued in the alternative for perhaps an 82% allocation and then a 40% allocation in the response papers on summary judgment. The court did get into the reasoning as to why she was rejecting those allocations and she didn't specifically reject the 40%, although the court did discuss the reasoning that would have supported or undercut the reasoning for the 40%. And it was clear that the court did not equate the unison lawsuit in federal court with the AAA arbitration for a number of reasons. That was not, those were not considered to be the same action. And what appellants have urged is the court to sort of see these as just the same unison litigation when they really, they are different actions. They involve different defenses and different claims. Do you think that, did the parties before the district court by agreement submit the issue to the district court of exactly what percent, what percentage should be recognized and established? Well, we certainly made the court aware that National Union under the policy of insurance was paying the 40% and the 10%. We did not squarely pose the reasonableness of those allocations, but we did challenge appellants burden of proof on the issue. So what's the answer to that question? So I think it would be res judicata. There would be no further action. So was there an agreement? Was this an agreed issue and an issue that by agreement of the parties, regardless of what the pleadings tee up, the parties agreed that the district judge should set the percentage? Is that what happened? No, I don't think that was the agreement that the judge would specifically kind of read all the facts and determine it. All we knew is that we were facing a summary judgment motion that sought 100% recovery and we were challenging that and also moving to say that appellant hadn't met its burden. But no, there was not an agreement to say, well, we're going to allow the judge to come up with the specific numbers that just came out in the cross motions. One side looking for 100, one side saying, no, it's not 100 and we've been paying, we'll continue to pay the 40 and the 10, but you haven't met your burden of showing an alternative allocation. So it's sort of like the policy itself crystallizes that allocation until such time as the insured comes forward and says, no, no, no, it has to be a different allocation for this reason and this reason and this reason. And that did not occur. We don't think that they met their burden. And that's why the motions for summary judgment were granted. Do you think they could bring another lawsuit? I disagree. And allege 90% this time and if they lose, then bring another one that alleges 60%? I don't think so. I think that ship has sailed. I think the time to have brought that motion would have been in the underlying in this lawsuit that we have before you. A couple of issues with respect to the cases. There's really the cases that appellants have cited that deal with allocation. Many of them will involve duties to defend, which I've said they're not implicated by this case. And other ones where appellants have claimed that we're defense costs for the affirmative actions that non-insureds under the policy have brought in the arbitration. The cases always state that it is an insured that would bring a cross-claim or a counterclaim. And the courts on some occasions when there's a symmetry to those claims, when the affirmative counterclaim is in essence a defense, courts will say that there's recoverable costs there. Those cases involve insureds, which was not the case here. The AAA arbitration was commenced by two non-insureds. There was no coverage for the contract claims and subsequent fraud claims that they brought in the arbitration. So they weren't insureds in the first instance, but also the claims were not defenses. They were affirmative claims that the arbitration panel ultimately resolved and said that, you know, neither side had had neither unison nor the appellants, including the non-insured entities, had proved their claims. And so they weren't, one wasn't a defense to the other. And they, that should not be, it's not fair to look at the AAA arbitration and say, well, these are all defense costs. And in fact, as the court is aware in the papers, the claims in the arbitration against the individual appellants were not even brought until 18 months after commencement of the arbitration. So it was October of 2015. It was 18 months between that time. And so all during that time, these were breach of warranty claims, contractual claims by the uninsured entities, and those would not have constituted defense costs under the policy, which require a claim against the insured. The issue with respect to the 82% and 40% allocation requests by the appellants, as I said, those were presented in response motions in the summary judgment. The court did directly address the 82%, the choice, the selection of 82% and found that it was not reasonable. And the national union's 40% was reasonable. The 10% appellants claim that there was no resolution as to whether 10% was or wasn't reasonable. Again, we maintain that national union didn't have the burden of showing 10% was reasonable or unreasonable. It was the appellant who had the burden of doing that. And so in that sense, appellants are trying to shift that burden when, you know, otherwise the court found that the reasoning underpinning the request for 40% arbitration did not justify it because of what we had argued, that these were non-insured claims being pressed in the arbitration. Your Honor, you know, really in sum, I think that the appellants always sought the 100% in the complaint on their motion, and the district court appropriately rejected that, and also rejected the 82% request, and addressed the it wouldn't think that 40% would be reasonable in the arbitration. It always drew a distinction between the unison action and the AAA arbitration. It didn't conflate the two. It separately resolved the issues. And with that, we do believe the case is over and wouldn't be susceptible to another action, or if it was, it would be barred by res judicata. With that, Your Honor, I don't have anything further. Thank you very much. All right. How much time does Mr. Stewart have? None, Your Honor. Mr. Stewart, can you wrap up in a minute? Of course, can all lawyers. Your Honor, I would just go back to one remark to circle back on from National Unions Council. With respect to the cases cited, he brought up the claims in the arbitration, and then became defenses again in the arbitration. So I fail to see the difference how there's no symmetry in claims when you bounce a defense to an affirmative claim back to a defense. With that, that's the only thing I'd point out, because to draw a distinction between the affirmative claims and defenses, there is none, because they became defenses twice and they were affirmative claims once. With that, I have nothing further, Your Honor. All right. Thank you very much. Thank you, counsel. Case is submitted. You may stand aside.